IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT E. WARDEN, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 11-2796 |
| | : | |
| PAMELA SENK FALK, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.** September 21, 2011

  Plaintiffs Robert E. Warden and ReWarden, Inc. ask this Court to enter summary judgment in their favor on Counts I through VI of the Complaint and seek cancelation of the "Bob Warden" trademark, Trademark Registration Number 3,635,725, which is currently registered in the name of Defendant Dynamic Housewares, Inc. (DHI). For the following reasons, this Court will grant in part and deny in part Plaintiffs' motion.[1]

**FACTS**[2]

  Warden is a television personality who has appeared on the QVC shopping network since 1987 to sell cookbooks and endorse the cookware products of others. The parties do not dispute that, through his appearances on QVC and elsewhere, Warden developed a common law trademark in his

---

[1] This case was scheduled to begin trial on September 19, 2011. After a jury was selected, but before the jury was sworn, this Court ruled from the bench on Plaintiffs' motion for summary judgment. Shortly thereafter, the parties settled their claims. This memorandum explains in more detail the Court's oral ruling.

[2] On a motion for summary judgment, a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor. *Doe v. County of Centre*, 242 F.3d 437, 446 (3d Cir. 2001). "Facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Ricci v. DeStefano*, 120 S. Ct. 2658, 2677 (2009) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."). Broadly defined, the central issue in Plaintiffs' partial motion for summary judgment is whether DHI's federal registration of the Bob Warden trademark is valid. Accordingly, this Court will limit its discussion to the facts relevant to this determination.

personal name, likeness, and professional image through his use in commerce of his name to sell cookbooks and endorse and promote the products of others.

In late 2006, Warden and Defendant Pamela Senk Falk, with whom Warden was previously involved in both business and romantic relationships at the time, decided to register a "Bob Warden" trademark (the Mark) with the United States Patent and Trademark Office (USPTO), and sought the assistance of attorney Christine Redfield to complete the trademark registration application. The trademark was to be registered in DHI's name. Before submitting the application, Redfield advised Warden and Falk that, for DHI to own the Bob Warden name and trademark in connection with cookware, housewares, and cookbooks, Warden would have to "assign all rights, title and interest in his name to [DHI]." Redfield email, Nov. 10, 2006. She further advised:

> If the application is to be filed in the name of [DHI] based on an oral license agreement from Bob to [DHI], we can go ahead and file the application now. However, if Bob decides to assign his name to [DHI], we should have an assignment agreement executed prior to filing the application.

*Id.* At a preliminary injunction hearing held in July 2011, Falk stated she did not receive an assignment of Warden's rights, title, goodwill, and/or interest in his name before the trademark registration application was filed, and further conceded she has never received such an assignment. Instead, Falk testified that Warden refused to execute an assignment.[3] No material issue of fact exists as to whether Falk or DHI received an assignment from Warden of the ownership of his name

---

[3] Falk testified Warden told her he would execute a written consent in lieu of an assignment and further said "he did not want an assignment. He did not think an assignment was necessary." Tr. of Preliminary Injunction Hr'g 6, July 14, 2011. Plaintiffs' counsel asked, "So, whatever else [is] in dispute, there's no disagreement about the fact that at no time did Bob Warden assign the trademark to you or to Dynamic Housewares, is that correct?" *Id.* To which Falk replied, "Yes, that's correct." *Id.*

and the goodwill and assets associated with his name.[4]

On November 13, 2006, Redfield submitted an application for trademark registration on DHI's behalf, which stated DHI owned the Bob Warden trademark. The November 2006 application asserted "Bob Warden" had been used as a trademark to promote the goods of others through infomercials, books, and personal appearances since at least December 31, 1986, and that "Bob Warden" had been used to sell cookware, including utensils, electric knives, food processors, electric mixers, other products, and cookbooks since at least December 31, 1993.

On March 31, 2007, the USPTO sent notification of an "Office Action" regarding registration of the Mark which identified a number of deficiencies in the trademark application, including that the application did not specify whether "Bob Warden" identified a particular living individual. The notice further stated that, "[i]f the name in the mark identifies a particular living individual," DHI was required to submit "a signed, written consent from that individual, authorizing applicant to register the name as a trademark with the USPTO." Pl.'s Mot. for Prelim. Injunction, Ex. 25. Thereafter, DHI obtained a consent form from Warden, dated May 14, 2007, stating "The undersigned Bob Warden, hereby consents to the use and registration as a trademark in the U.S. Patent and Trademark Office of his name by Dynamic Housewares, Inc." *Id*., Ex. 31. Warden received no consideration from DHI for signing this consent form. The Bob Warden trademark was

---

[4] Falk attempted to create a material issue of fact by submitting an unsworn declaration contradicting her prior sworn testimony, in which she stated she received a verbal assignment from Warden of his name, and the goodwill and assets associated therewith. By Order of September 16, 2011, this Court granted Plaintiffs' request to disregard this unsworn declaration, finding it was a "sham affidavit" which was not supported by a plausible explanation for the difference between the declaration and Falk's prior sworn testimony before this Court.

registered, effective June 9, 2009.[5]

On June 23, 2011, approximately two months after filing his Complaint, Warden sent a letter to Falk, stating

> In addition to the Complaint filed in Federal Court in the Eastern District of Pennsylvania, this letter is formal notice that I hereby revoke the Consent dated May 14, 2007, to the use and registration of my name[,] Bob Warden[,] as a trademark in the United States Patent and Trademark Office.
> . . .
>
> This letter is also formal notice that I hereby revoke any and all licenses that I may have granted to [DHI] or to you personally, for the use of my name BOB WARDEN, or the trademark BOB WARDEN, in connection with the sale or distribution of any goods or services, whether oral, in writing, or implied by my ownership in, association with and/or by working with you and/or with Dynamic Housewares, Inc. Please be advised that [DHI] no longer has the right to use my name, or the trademark BOB WARDEN.

Pl.'s Mot. for Prelim. Injunction, Ex. 28.

Plaintiffs sought a preliminary injunction asking this Court to bar Falk from asserting she owned the Bob Warden name and Warden could not do business without her permission. On July 27, 2011, after finding Plaintiffs satisfied the standard for obtaining a preliminary injunction, this Court granted Plaintiffs' motion and enjoined Defendants from contacting Plaintiffs' business relations with the intent to interfere with Plaintiffs' right to contract, representing or suggesting they had control over Bob Warden's name, commercial appearances, and publications, and otherwise representing or suggesting they owned a trademark in Bob Warden's name. Plaintiffs now ask this Court to cancel DHI's registration of the Mark, arguing either the registration was void *ab initio*

---

[5] After DHI submitted its responses to the March 31 USPTO office action, the USPTO sent a further notification of office action again refusing registration of the "Bob Warden" trademark because it identified only a writer's name or pseudonym and did not function as a trademark. Pl.'s Mot. for Prelim. Injunction, Ex. 14. Following DHI's submission of additional materials, the USPTO approved registration. *Id..*, Ex. 27.

because DHI falsely represented it owned the Mark or that the only interest DHI had in the Mark was a license to use which has since been revoked by Warden and the trademark in DHI's name should be canceled because DHI's continued use of the Mark is likely to cause confusion in the marketplaces about the source of "Bob Warden" goods.

**DISCUSSION**

Summary judgment shall be granted "if the movant shows that there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and must cite "particular parts of the materials in the record" which it believes demonstrate the absence of a genuine issue of material fact, Fed. R. Civ. P. 56(c)(1)(A). The nonmoving party must then "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*,. 477 U.S. at 324 (internal quotations and citation omitted).

Plaintiffs assert DHI has no legitimate claim of ownership to the Mark, and argue the Mark should therefore be canceled pursuant to 15 U.S.C. §§ 1064 and 1119 because the registration was void *ab initio*. Section 1119 provides that, "[i]n any action involving a registered mark the court may determine the right to registration, [or] order the cancelation of registrations, in whole or in part." 15 U.S.C. § 1119; *see also Ditri v. Coldwell Banker Residential Affiliates*, 954 F.2d 869, 873 (3d Cir. 1992) (explaining § 1119 gives federal courts concurrent authority with the USPTO to cancel a registered mark when the validity of the mark is challenged in a judicial proceeding). A petition to cancel the registration of a mark may be filed within five years from the date of the

registration of the mark.[6]  *Id.*   The party seeking cancelation bears the "burden to establish a prima facie case" and must show by a preponderance of the evidence that the trademark is invalid.  *Cold War Museum, Inc. v. Cold War Air Museum, Inc.*, 586 F.3d 1352, 1358 (Fed. Cir. 2009).

A party seeking cancelation of a trademark must prove it has standing and that valid grounds exist for cancelation of the trademark registration.  *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945 (Fed. Cir. 2000).  The Mark is Warden's personal name, which the parties agree he developed as a trademark through use in commerce since 1986.  Warden intends to continue using his name commercially, by appearing on QVC and selling and/or promoting cookbooks and cooking products authored, developed, or endorsed by him.  Thus, Warden indisputably has standing to seek cancelation of the Mark.  *See id.* (explaining the standing requirement is satisfied if the party seeking cancelation shows he has a direct commercial interest that is damaged by the registration).  When a mark has been registered for less than five years, it may be canceled upon a showing of "any ground that would have prevented registration in the first place."  *Cunningham*, 222 F.3d at 946.  A trademark cannot be registered if the applicant does not own the trademark, thus, a mark may be cancelled upon a showing that the entity holding the mark's registration is not the lawful owner.  *See* 15 U.S.C. § 1051 (stating only the owner of a trademark can apply for trademark registration).  A trademark can also be canceled if the party seeking cancelation shows the registration creates a likelihood of confusion in the marketplace about the source of the goods affiliated with the trademark.  *See McCarthy*, § 20:53.

To register a trademark, the mark which is the subject of the application must already operate

---

[6] When five years have passed after the registration date, a cancelation petition may only be filed in certain circumstances.  Neither party disputes that the Mark was registered less than five years ago, and the Mark has therefore not become "incontestable."  *See* 15 U.S.C. § 1065.

as a trademark insofar as the public must recognize that a certain quality of goods and services are associated with the mark. *See Berner Int'l Corp. v. Mars Sales Co.*, 987 F.2d 975, 979 (3d Cir. 1993) (explaining "a term is protectable as a trademark only if the public recognizes it as identifying the [trademark owner's] goods or services and distinguishing them from those of others" (citations and internal quotation marks omitted)). Trademark rights are acquired and maintained through priority of use, not through registration with the USPTO. *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 146-47 (2d Cir. 2007) (explaining that registration of a trademark "shall constitute constructive use of the mark, conferring a right of priority, nationwide in effect . . . against any other person except for a person whose mark has not been abandoned and who, prior to [registration] . . . has used the mark" (citing 15 U.S.C. § 1057(c)); *see also Basile, S.P.A. v. Basile*, 899 F.2d 35, 37 n.1 (D.C. Cir. 1990) ("Although [trademark] registration is a predicate to [trademark] protection under the Lanham Act, the underlying right depends not on registration but rather on use.").

The parties agree the name Bob Warden had acquired secondary meaning in 2006 insofar as "the public ha[d] come to recognize the personal name as a symbol that identifie[d] and distinguishe[d] the goods or services of only one seller."[7] J. McCarthy, *McCarthy on Trademarks and Unfair Competition* § 13:28 (4th ed. 2011) (hereinafter *McCarthy*). There is also no dispute that Falk did not meet Warden until 2005, and that DHI was not created or incorporated until 2006. Thus, at the time the trademark application was filed, the secondary meaning associated with " Bob

---

[7] When DHI attempted to register the Mark in 2006, its application asserted the Bob Warden trademark, as it applied to "[p]romoting the goods of others through infomercials, books, and personal appearances," had existed since at least 1986, and that the Bob Warden trademark, as it applied to cookbooks and cookware, had been in existence since 1993. Additionally, at a hearing regarding Plaintiffs' motion to enforce an interim settlement agreement, QVC's counsel testified Warden had done business with QVC since the late 1980s, and had an established relationship with QVC.

Warden" had been developed solely by Warden through his use of his name in commerce through collaborations with QVC and sale of his cookbooks and cookware products for the previous 18 years. *See* 15 U.S.C. § 1127. Therefore, prior to DHI's registration attempt, Warden owned the common law trademark associated with his name. Because DHI indisputably did not own the mark before 2006, DHI must show it otherwise lawfully acquired ownership rights to the Mark to avoid cancelation.

Because Warden owned the Mark in 2006, DHI can only claim ownership of the Mark if Warden assigned DHI the rights to his name. *See Beauty Time, Inc. v. Beauty Makers, Inc.*, 118 F.3d 140, 150 (3d Cir. 1997) (explaining effective assignment of the rights to a trademark is a prerequisite to ownership rights in the trademark). In addition to receiving an assignment of the rights to Warden's name, DHI also must have received from Warden the goodwill associated with his name and business for such assignment to be valid. *See id.* (stating a trademark assignment "represent[s] the transfer of goodwill connected with a particular business . . . and [a trademark] cannot be transferred separately from the goodwill of the business"). Falk concedes neither she nor DHI ever received an assignment from Warden of the Mark, the assets associated with his trademark, or the goodwill established through his use of his name.[8] Indeed, Falk testified she asked Warden to

---

[8] This Court can also infer such an assignment was never obtained based on Redfield's November 10, 2006, email, in which she wrote,

> If the application is to be filed in the name of [DHI] based on an oral license agreement from Bob to [DHI], we can go ahead and file the application now. However, if Bob decides to assign his name to [DHI], we should have an assignment agreement executed prior to filing the application.

The trademark registration application was filed three days later, and Redfield testified she did not recall obtaining an assignment of Warden's name on behalf of DHI. Accordingly, it is a reasonable inference that such an assignment was not obtained.

execute an assignment and he refused.[9]  Rather, Warden consented to DHI's use and registration of his name as a trademark.[10]

Because there is no genuine dispute that Defendants did not receive an assignment of the Bob Warden trademark, Plaintiffs have shown by a preponderance of the evidence that DHI never owned the Mark because Warden developed the trademark himself, never assigned rights in the trademark to DHI, and to the extent Warden's consent to use his name operated as a license, he terminated that license by letter of June 23, 2011. *See Trace Minerals Research, L.C. v. Mineral Res. Int'l, Inc.*, 505 F. Supp. 2d 1233, 1241 (D. Utah 2007) ("A [trademark] license containing no time frame is generally terminable at will.") (citing *Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc.*, 88 F. Supp. 2d 914, 922 (C.D. Ill. 2000)). Cancelation of the Mark is appropriate. Because material issues of

---

[9] Having conceded they received no actual assignment from Warden, Defendants instead assert the consent form signed by Warden operates as an assignment of Warden's rights to and ownership of his trademark. Although "[a]n assignment in writing is not necessary to transfer common law rights in a trademark," *McCarthy* § 18.4, an act which a party asserts is an implied agreement to transfer trademark rights will be construed as an assignment only if the "conduct manifest[s] agreement" to transfer the rights. *TMT N. Am., Inc. v. Magic Touch GmbH*, 124 F.3d 876, 884 (7th Cir. 1997) (explaining the requirement of "strong evidence" to establish an assignment encourages parties to expressly identify their ownership interest in trademarks and prevents a party "from using self-serving testimony to gain ownership of trademarks"). There is no strong evidence of intent to create an assignment here, only evidence that Warden refused DHI's request for an assignment of his rights to his name. Moreover, the plain language of the consent form does not purport to transfer ownership rights, title, or the trademark's goodwill to DHI; it is merely a consent to DHI's "use and registration as a trademark" of the Bob Warden name. Pl.'s Mot. for Prelim. Injunction, Ex. 31.

[10] Granting consent to use a trademark instead of transferring ownership in a mark is also inconsistent with an assignment of rights and title. Moreover, DHI's acceptance of the right to use Warden's name is a tacit acknowledgment that DHI did not own the trademark at the time Warden signed such consent. *See A & L Labs., Inc. v. Bou-Matic LLC*, 429 F.3d 775 (8th Cir. 2005) (explaining that, "if [the licensee] had owned the trademarks, it would not have needed [the trademark owner's] permission to use them"); *Hot Stuff Foods, LLC v. Mean Gene's Enters., Inc.*, 468 F. Supp. 2d 1078, 1095 (D.S.D. 2006) (explaining the existence of a party's license to use a trademark indicates the party does not own the licensed mark).

fact remain with regard to Counts I through VI of the Complaint, this Court will deny summary judgment as to those claims.

An appropriate order follows.

BY THE COURT:


 /s/ Juan R. Sánchez
Juan R. Sánchez, J.